UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER TARR,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 2:16-cv-1588-JAM-CKD

<u>FINDINGS AND RECOMMENDATIONS</u>

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will recommend that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

I. <u>BACKGROUND</u>

Plaintiff, born March 30, 1965, applied on March 3, 2015 for DIB, alleging disability beginning June 30, 2013. Administrative Transcript ("AT") 159-62. Plaintiff alleged he was unable to work due to attention deficit hyperactivity disorder ("ADHD"), anxiety, degenerative disc disease, degenerative joint disease, lumbar spine impairment, and cervical spine impairment. AT 180. In a decision dated February 24, 2016, the ALJ determined that plaintiff was not

disabled.[1] AT 11-21. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since June 30, 2013, the alleged onset date.
>
> 3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD), right elbow epicondylitis, bilateral flat feet and cervical radiculopathy.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401, *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment . . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can sit, stand and/or walk for six hours in an eight-hour day, must alternate sitting and standing in one hour intervals, can frequently reach with the right upper extremity, cannot perform fast-paced work, cannot sustain intense concentration for more than thirty minutes without a five minute change of focus and may be absent or off task five percent of the time.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on March 30, 1965 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2013, through the date of this decision.

AT 13-20.

II. ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly considered and weighed the opinions of treating physicians Dr. Copeland and Dr. Reza when determining plaintiff's residual functional capacity ("RFC"); and (2) improperly found plaintiff's testimony regarding the disabling nature of the symptoms arising from his functional limitations less than fully credible.

/////

/////

/////

III.     LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.     ANALYSIS

   A.     *The ALJ did not Erroneously Consider and Weigh the Opinions of Dr. Copeland and Dr. Reza*

First, plaintiff argues that the ALJ erred in his consideration and weighing of the medical opinions provided by Dr. Copeland, a treating psychiatrist, and Dr. Reza, a treating family practitioner.

/////

4

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

        1.    Dr. Copeland's Opinions

On January 7, 2014, Dr. Copeland conducted an examination of plaintiff's mental condition and, on November 19, 2014, provided a medical source statement opining on the extent of plaintiff's mental impairments based on that examination. AT 553-57. In his medical source statement, Dr. Copeland opined that plaintiff had a "good" ability to interact appropriately with the public, meaning that plaintiff's mental impairments did not significantly limit him from performing that activity. AT 556. Dr. Copeland opined further that plaintiff had a "fair" ability to perform the following workplace functions: understand, remember, and carry out simple and complex instructions; maintain concentration, attention, and persistence; and interact appropriately with supervisors and the public. Id. Dr. Copeland defined a "fair" ability to mean that plaintiff's capacity to perform a given workplace activity was impacted by his mental impairments, "but that the degree/extent of the impairment needs to be further described." Id. Finally, Dr. Copeland opined that plaintiff had a "poor" ability to perform activities within a

5

schedule and maintain regular attendance, complete a normal workday and workweek without interruptions from psychologically based symptoms, and respond appropriately to changes in a work setting. Id. Copeland defined a "poor" ability to mean that the evidence supports the conclusion that plaintiff "cannot usefully perform or sustain the activity." Id.

On July 27, 2015, Dr. Copeland filled out a mental impairment questionnaire providing an additional opinion regarding the extent of the functional limitations caused by plaintiff's mental impairments. AT 636-40. In this questionnaire, Dr. Copeland noted that the last time he had conducted an examination of plaintiff was in January of 2014. AT 636. With regard to the extent of plaintiff's mental limitations, Dr. Copeland opined that plaintiff would have "none-to-mild" limitations in any functional area relating to social interactions, and with regard to the ability to work in coordination with or near others without being distracted by them. AT 639. Dr. Copeland opined further that plaintiff would have "moderate" limitations with regard to the following abilities: understand, remember, and carry out simple and detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and consistently be punctual; sustain ordinary routine without supervision; make simple work-related decisions; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; respond to workplace changes; be aware of hazards and take appropriate precautions; travel to unfamiliar places or use public transportation; set realistic goals; and make plans independently. Id. Dr. Copeland also opined that plaintiff had a "moderate-to-marked" limitation with regard to the ability to remember locations and work-like procedures. Id. Finally, Dr. Copeland opined that plaintiff also suffered from "severe distractibility," and would likely be absent from work more than 3 times per month as a result of his impairments. AT 640.

The ALJ assigned "little weight" to Dr. Copeland's opinions because "they are inconsistent with the medical records, which revealed generally benign results and they appear to rely quite heavily on the claimant's subjective complaints." AT 16. Plaintiff contends that neither of the ALJ's reasons for discounting Dr. Copeland's opinions was supported by substantial evidence because the medical evidence in the record actually provides findings that

6

support Dr. Copeland's opinions regarding the extent of plaintiff's mental impairments, and that correspond with plaintiff's reported symptoms. The court finds plaintiff's argument unavailing.

First, the ALJ determined that Dr. Copeland's opinions were not supported by the other medical evidence in the record. An ALJ may properly discount a treating physician's opinion when it is only minimally supported by the other medical evidence in the record. Meanel, 172 F.3d at 1113 (discounting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751. Here, substantial evidence exists in the record indicating that the symptoms stemming from plaintiff's ADHD were not as impactful as Dr. Copeland opined. E.g., AT 309, 363-64, 382, 479-80, 626, 646, 655. The ALJ properly relied on such benign findings in the record to determine that Dr. Copeland's opinions were entitled to only little weight. Plaintiff argues that the medical findings in the record actually support the mental functional limitations Dr. Copeland opined. However, even assuming that there are potentially multiple rational interpretations of those medical findings, the ALJ's reasonable conclusion that that evidence does not support the degree of limitation Dr. Copeland opined must be upheld. See Tommasetti, 533 F.3d at 1038 ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.").

Furthermore, the ALJ properly determined that the opinion of Dr. Sanders, plaintiff's treating psychologist, better reflected the findings and observations contained in plaintiff's medical records regarding his ADHD. Indeed, Dr. Sanders determined that plaintiff's ADHD caused only mild impairment in concentration and memory, and caused him to be limited in a manner that left him with a "good" to "fair" ability to perform other mental workplace activities. AT 290-92. The ALJ was permitted to interpret the medical evidence in the record in the manner that he did and determine that it better supported Dr. Sanders' opinion, thus entitling it to greater weight than Dr. Copeland's opinion. See Burkhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988) (holding that the ALJ properly determined that the "arguably 'conflicting clinical evidence'" in the record supported the opinion of one of the claimant's treating physicians over that of another treating physician, thus entitling the former treating physician's opinion to greater weight than the opinion of the latter treating physician).

1    Second, the ALJ also discounted Dr. Copeland's opinions because they appeared to rely
2    too heavily on plaintiff's own subjective complaints. Given that the more limiting aspects of Dr.
3    Copeland's opinion appear to track plaintiff's own complaints regarding the extent of his
4    symptoms stemming from his ADHD, it was proper and reasonable for the ALJ to cite to the
5    apparent reliance on plaintiff's subjective complaints as an additional reason for discounting Dr.
6    Copeland's opinion. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir.
7    2004) (upholding ALJ's decision to discount treating physician's opinion when it was "in the
8    form of a checklist, did not have supportive objective evidence, was contradicted by other
9    statements and assessments of [the claimant's] medical condition, and was based on [the
10   claimant's] subjective descriptions of pain").
11   In sum, the ALJ provided multiple specific and legitimate reasons for assigning only
12   "little weight" to Dr. Copeland's opinions that were supported by substantial evidence in the
13   record. Accordingly, the court finds that the ALJ did not err in considering and weighing Dr.
14   Copeland's opinion.
15                    2.    Dr. Reza's Opinions
16   On September 12, 2014, Dr. Reza completed a form regarding the extent of plaintiff's
17   physical functional limitations. AT 674. In this assessment, Dr. Reza noted that plaintiff's
18   primary condition was "ADHD combined type," and described that condition as chronic,
19   progressive, and permanent. Id. With regard to plaintiff's physical impairments, Dr. Reza opined
20   that plaintiff could walk up to 2 miles, and stand for 6 hours or more in an 8-hour workday. Id.
21   Dr. Reza also opined that plaintiff had no limitations with regard to sitting, using stairs, stooping,
22   bending, twisting, and exposure to temperature extremes. Id. Dr. Reza opined further that
23   plaintiff could lift up to 100 pounds, and carry up to 60 pounds. Id. Dr. Reza also noted that
24   plaintiff had an "[i]nability to concentrate due to ADHD preventing him from getting
25   employment." Id. Finally, Dr. Reza stated his belief that plaintiff could not return to competitive
26   employment if the work demands were at or below the functional limitations Dr. Reza opined. Id.
27   /////
28   /////

Dr. Reza also completed a medical source statement regarding the extent of plaintiff's physical limitations on November 20, 2014. AT 675-76. In this medical source statement, Dr. Reza opined that plaintiff had no lifting or carrying restrictions, could stand and/or walk for about 6 hours in an 8-hour workday, and sit for less than 6 hours total in an 8-hour workday. AT 675. Dr. Reza further expounded upon his opined sitting restriction by noting that plaintiff could sit for a total of only 30 minutes at a time because plaintiff "is hyperactive and fidget[s]." Id. Dr. Reza also opined that plaintiff would need to alternate between standing and sitting, but that normal breaks and lunch periods would be sufficient to address that need. Id. Dr. Reza opined further that plaintiff could frequently climb and kneel, but could only occasionally balance, stoop, crouch, or crawl. AT 676. Dr. Reza determined that plaintiff could constantly reach and feel and frequently handle and finger bilaterally using his upper extremities. Id. Finally, Dr. Reza opined that plaintiff was restricted from exposure to heights and dust due to seasonal allergies. Id. Dr. Reza described plaintiff's prognosis as "fair." Id.

On April 17, 2015, Dr. Reza completed a disability impairment questionnaire, in which he provided a third opinion regarding plaintiff's functional limitations. AT 600-04. Dr. Reza diagnosed plaintiff with "ADHD combined type," and noted that plaintiff's primary symptoms were an "[i]nability to focus and concentrate." AT 600-01. With regard to functional limitations, Dr. Reza opined that plaintiff could sit, stand and/or walk for a total of over 6 hours during an 8-hour workday. AT 602. Dr. Reza opined further that plaintiff could frequently lift and/or carry up to 50 pounds frequently and over 50 pounds occasionally. Id. Dr. Reza also opined that plaintiff had no restrictions regarding reaching, handling, or fingering. AT 603. Finally, Dr. Reza opined that plaintiff's symptoms would likely increase if plaintiff were placed in a competitive work environment because plaintiff's "inability to concentrate may create anxiety." Id. However, Dr. Reza also noted that plaintiff's symptoms would "rarely" be severe enough to cause any interference with attention and concentration during an 8-hour workday, and would cause plaintiff be absent from work "[l]ess than once a month." AT 603-04.

/////

/////

The ALJ found Dr. Reza's opinion regarding the extent of plaintiff's physical impairments "persuasive because it is based upon a significant treatment history and is consistent with [plaintiff's] admitted abilities." AT 17. Accordingly, the ALJ assigned "significant weight" to Dr. Reza's opinion. Id. Plaintiff argues, however, that the ALJ improperly ignored certain observations Dr. Reza made regarding plaintiff's mental condition, and focused only on Dr. Reza's opinion addressing plaintiff's physical limitations to support his RFC determination. Specifically, plaintiff contends that Dr. Reza opined that plaintiff's ADHD rendered him unable to concentrate sufficiently for him to obtain employment, a finding the ALJ did not address in his discussion of Dr. Reza's opinion. Plaintiff asserts further that the ALJ also failed to address Dr. Reza's finding that plaintiff was hyperactive and fidgety, which Dr. Reza opined rendered plaintiff able to sit for only 30 minutes at a time. Finally, plaintiff contends that the ALJ failed to consider Dr. Reza's finding that plaintiff's inability to concentrate may create anxiety, and that plaintiff's symptoms could worsen if plaintiff were in a competitive work environment. These arguments are without merit.

First, Dr. Reza noted in his August 24, 2014 opinion regarding plaintiff's physical functional limitations that plaintiff had an "[i]nability to concentrate due to ADHD preventing him from *getting* employment." AT 674 (emphasis added). Such a finding did not necessarily mean that plaintiff's ADHD precluded him from performing work-related functions, which is the relevant inquiry for purposes of determining entitlement to DIB. See Lester, 81 F.3d at 828, n.5. Rather, similar to what plaintiff reported during the administrative hearing, see AT 56-58, this observation merely noted that the symptoms stemming from plaintiff's ADHD prevented him from getting any of the jobs to which he had applied. Moreover, while Dr. Reza also noted in that same opinion that he did not believe that plaintiff could return to competitive employment if the work demands were at or below the functional level he opined, the ALJ was not required to adopt that conclusion—or the conclusion that plaintiff's ADHD precluded plaintiff from employment, to the extent such a conclusion could be drawn from Dr. Reza's opinion—in determining plaintiff's RFC. See 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.");

Allen v. Comm'r of Soc. Sec., 498 Fed. App'x 696, 696 (9th Cir. 2012) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1)-(2)) ("A treating physician's opinion on the availability of jobs and whether a claimant is disabled are opinions on issues reserved to the Commissioner."). "A treating source's opinion on issues reserved to the Commissioner can never be entitled to controlling weight or given special significance." Allen, 498 Fed. App'x at 696 (citing SSR 96-5p, 1996 WL 374183 *5). Accordingly, the ALJ did not commit prejudicial error by not addressing these aspects of Dr. Reza's August 24, 2014 opinion.

Second, the other two aspects of Dr. Reza's opinions plaintiff contends the ALJ failed to consider when addressing those opinions are not actual estimations regarding plaintiff's functional capacity, but rather symptoms Dr. Reza observed and took into consideration when developing his opinions regarding plaintiff's physical functional limitations. The ALJ considered all of the physical functional limitations Dr. Reza opined, reasonably found those opined limitations persuasive and consistent with the rest of the record, and properly incorporated those limitations into his overall RFC determination. AT 17. Such an assessment was proper and supported by substantial evidence in the record. See Tackett, 180 F.3d at 1097. Accordingly, the court finds that plaintiff's argument that the ALJ erred in assessing Dr. Reza's opinions lacks merit.

    A. *The ALJ did not err in Rendering his Adverse Credibility Determination with Regard to Plaintiff's Testimony*

Second, plaintiff argues that the ALJ erred in finding plaintiff's testimony that his impairments caused debilitating symptoms less than fully credible.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

/////

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7p; SSR 95-5p; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant non-exertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms stemming from his impairments to be not entirely credible for the following reasons: (1) plaintiff made inconsistent statements regarding matters relevant to the issue of disability; (2) plaintiff failed to follow up on recommended treatment; (3) plaintiff's testimony conflicted with the objective medical evidence in the record; and (4) plaintiff's reported activities conflicted with plaintiff's claims of disabling symptoms. AT 17-19.

/////

/////

First, the ALJ discounted plaintiff's testimony because plaintiff provided inconsistent statements regarding the onset date of the symptoms stemming from his ADHD. AT 18. Indeed, as the ALJ noted in his decision, plaintiff described to his psychiatrist at the Veterans' Administration ("VA") on March 15, 2013 that he had had "a full spectrum of ADHD . . . that ha[d] been present since his childhood as early as he could remember." AT 18, 659. Plaintiff also told the VA psychiatrist that "he has always been hyperactive and this was noted at school," and that "he was identified by teachers for his hyperactive behaviors." AT 659. However, plaintiff later began telling his treating physicians that the symptoms arising from his ADHD "started sometime around 2005," and that they "started abruptly" at that time. AT 607, 680. While plaintiff asserts that the ALJ relied only on this single inconsistency to support his rationale, this does not mean that the ALJ erred by including that observation as one reason in support of his adverse credibility determination. Indeed, it is proper for an ALJ to rely on the claimant's inconsistent statements in the record to support a determination that the claimant's testimony is not credible. See, e.g., Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (upholding ALJ's adverse credibility determination based on the claimant's inconsistent statements regarding her alcohol and drug use); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may use ordinary techniques of credibility evaluation, such as inconsistent statements); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (ALJ may discredit claimant's allegations based on inconsistencies in the testimony or on relevant character evidence). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." Social Security Ruling 96-7p, 1996 WL 374186, at *5. Here, the ALJ properly cited to plaintiff's inconsistent statements in the record regarding the onset of his symptoms relating to his ADHD as one reason in support of his adverse credibility determination.

Second, the ALJ claimed that the record shows that plaintiff failed to follow through on all of the treatment his physicians recommended, which suggested to the ALJ that the symptoms stemming from plaintiff's impairments were not as debilitating as he alleged. AT 18. The claimant's failure to seek treatment or follow a prescribed course of treatment is a proper reason

13

for discounting the claimant's pain and symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); Molina v. Astrue, 674 F.3d 1104, 1113-14 (9th Cir. 2012) (citation and quotation marks omitted) ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony."). Plaintiff argues, however, that the ALJ's determination that plaintiff failed to follow through with recommended treatment is not supported by substantial evidence in the record because plaintiff's treatment records actually demonstrate that plaintiff had been diligent in taking his prescribed medications and following through with recommended medical treatment, and had made appropriate attempts to seek medical solutions to his symptoms. However, even assuming, without deciding, that substantial evidence in the record did not support this reason to discount plaintiff's testimony, the error is harmless because the ALJ provided several other valid reasons for only partially crediting plaintiff's testimony discussed both above and below. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

The ALJ also noted that the medical evidence in the record did not support the degree of limitation to which plaintiff testified. AT18-19. As the ALJ noted in his decision, the mental status notes from plaintiff's physicians reveal findings that reasonably indicate that the symptoms arising from plaintiff's ADHD were not to the degree plaintiff alleged. E.g., AT 309, 363-64, 382, 479-80, 626, 646, 655. With regard to plaintiff's physical impairments, the ALJ found that the examination notes in the record demonstrate largely normal results in areas such as strength, gait, stance, deep tendon reflexes, range of motion, muscle tone, and grip strength, which conflicted with plaintiff's claims of debilitating physical impairment, AT 19, a finding that is supported by the record, e.g., AT 578, 581-85, 593. The ALJ also highlighted the fact that the consultative examiner regarding plaintiff's physical impairments noted that plaintiff could walk into the examination room without difficulty, sit comfortably, and transfer from a chair to

examination table without difficulty, findings which the ALJ reasonably found to conflict with plaintiff's allegations of severe musculoskeletal pain. AT 19, 582. Plaintiff asserts that the ALJ essentially cited to only the most benign aspects of the medical examination records in the record to support his conclusion, while completely ignoring other aspects of those same records that support plaintiff's allegations of debilitating symptoms. However, the mere fact that plaintiff advances a different interpretation of the medical examination records does not mean that the ALJ committed prejudicial error in relying on that evidence to support his adverse credibility determination; the ALJ's interpretation of that evidence as conflicting with the extreme limitations plaintiff alleged was reasonable and based on substantial evidence. See Tommasetti, 533 F.3d at 1038 ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."). Furthermore, although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681. Accordingly, the ALJ did not err in citing to the lack of objective medical evidence supporting plaintiff's pain and symptom testimony as one reason in support of his adverse credibility determination.

Finally, the ALJ also cited to the fact that some of plaintiff's reported activities conflicted with his claims of disabling symptoms. AT 19. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, in particular, the ALJ cited to the fact that plaintiff "had recently refinished his kitchen and had performed other projects around the house" was inconsistent with plaintiff's allegations of severe musculoskeletal impairment. AT 19. This finding is substantially supported by plaintiff's statements to a treating psychiatrist on April 30, 2015 that "he refinished his kitchen cabinets and ha[d] been doing some other projects around the house." AT 610. The ALJ also noted more generally that plaintiff's then-recent visit to Hawaii with his wife and another couple tended to "suggest that [plaintiff's] alleged symptoms and limitations may have been overstated." AT 19. This observation was also substantially supported by the evidence in the record. AT 680. The activities the ALJ cited to in support of his adverse credibility determination reasonably suggest that plaintiff's impairments were not as debilitating as plaintiff alleged. Accordingly, it was proper for the ALJ to mention those activities in support of his conclusion regarding plaintiff's credibility. See Molina, 674 F.3d at 1112-13.

In sum, because the ALJ provided multiple clear and convincing reasons to support his adverse credibility determination, each of which was supported by substantial evidence from the record, the court finds that that determination was not made in error.

V. CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 12) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may

16

waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  May 15, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 tarr1588.ss